# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GARY MORRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **2:12-cv-3460-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Gary Morris ("Morris") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Morris, whose past relevant experience includes work as a truck driver, filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income on August 19, 2010, alleging a disability onset date of June 6, 2010, due to depression, anxiety, fatigue, fainting, memory loss, and thyroid problems.  (R. 11, 178).

After the SSA denied Morris's claim, he requested a hearing before an ALJ. (R. 123). The ALJ subsequently denied Morris's claim, (R. 8-23), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Morris then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if

the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Commissioner;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

3

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Morris had not engaged in substantial gainful activity since June 6, 2010, and, therefore, met Step One.  (R. 13). Next, the ALJ found that Morris satisfied Step Two because he suffered from the severe impairments of

> a history of gastroesophageal reflux disease and peptic ulcer disease under medical management; a history of anxiety disorder under medical management and responsive to medical management; major depressive disorder under medical management and responsive to medical management; mild degenerative disc disease of cervical spine without acute pathology; and hypogonadism or low testosterone, on supplemental therapy.

*Id*.  The ALJ then proceeded to the next step and found that Morris failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 14).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at

4

1030, the ALJ proceeded to Step Four where he determined that Morris has the residual functional capacity (RFC) to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) which would not involve any work with hazardous machinery or unprotected heights; would involve frequent to occasional stooping, kneeling, crouching, crawling and climbing of stairs and ramps; occasional to frequent but not constant overhead reaching. He is prohibited from climbing ladders, ropes, and scaffolding; and limited to work which would allow the claimant to sit or stand at his option.
>
> The claimant can understand, remember and carry out instructions sufficient to perform simple, routine, repetitive tasks. He can maintain concentration, persistence and pace for periods up to 2 hours sufficient to perform a regular workday with routine breaks. He is limited to a low stress job defined as occasional changes in the work setting, goal oriented work rather than production rate pace work; dealing with things rather that people; and preferably a well spaced work environment

(R. 15). In light of his RFC, the ALJ held that Morris "is unable to perform any past relevant work." (R. 21). Lastly, in Step Five, the ALJ considered Morris's age, education, work experience,[1] and RFC and determined "there are jobs that exist in significant numbers in the national economy [Morris] can perform." (R. 22). Therefore, the ALJ found that Morris "has not been under a disability, as defined in the Social Security Act, from June 6, 2010, through the date of this decision." *Id.*

## V. Analysis

The court now turns to Morris's contentions that the ALJ erred in (1) finding his possible diagnosis of attention deficit disorder and presyncope episodes with dizziness

---

[1] As of the date of the ALJ's decision, Morris was 49 years old, had a high school education, and past relevant medium semiskilled work as a truck driver. (R. 21).

were not severe impairments; (2) finding he did not meet listing 12.04; and (3) assessing his RFC. *See* doc. 11 at 2-5. The court addresses each contention in turn.

  A. <u>The ALJ's Consideration of Morris's Possible Diagnosis of Attention Deficit Disorder and Presyncope Episodes with Dizziness</u>

Morris contends the ALJ erred in finding at Step Two that his possible diagnosis of attention deficit disorder and presyncope episodes with dizziness were not severe impairments. A review of the medical evidence reveals that substantial evidence supports the ALJ's finding that Morris's "possible attention-deficit disorder is managed with medication," and that there was "no evidence the claimant's attention deficit disorder . . . cause[d] any more than minimal functional limitations or restrictions." (R. 14). For example, after Morris began taking medications, treatment notes in October and November 2010 from Dr. Terry Bentley, Morris's treating psychiatrist, state that Morris's "focus and concentration are good," and that his "attention span and concentration are good." (R. 394-95). In fact, Dr. Bentley noted on December 17, 2010, that Morris reported "[t]his was a miracle medication for me." (R. 396). In addition to the effective medication therapy, the ALJ also noted that "an evaluation of [Morris's] pre-syncope episodes yielded negative cardiology and brain imaging," (R. 14), and that Morris's "allegations of continued pre-syncope events and dizziness are not supported by the objective medical evidence, which note improvement, and [Morris] acknowledges that his physician indicated the events are psychogenic in nature." (R. 19). Although, on August 2, 2010, Dr. Thomas Bryant noted that Morris was "doing fairly well, but still having a lot

of dizziness," (R. 249), Dr. Bryant's later treatment notes make no further mention of presyncope and dizziness. (R. 348, 355, 357). Therefore, based on this record, the court finds that substantial evidence supports the ALJ's finding that these conditions were not severe impairments.

Ultimately, because the ALJ found in Morris's favor at Step Two, the specific impairments listed are irrelevant. After all, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," provided the ALJ considered the claimant's impairments in combination. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010); *see also Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (noting that a failure to find that claimant's mental impairment was severe was harmless because the ALJ found other severe impairments and considered the impairment in the rest of the decision). There is no error here because the ALJ specifically stated that Morris's nonsevere impairments "have been considered for purposes of the claimant's assigned residual functional capacity." (R. 14). In fact, he discussed Morris's presyncope events and dizziness, in giving him "the great benefit of the doubt, [by prohibiting] working from unprotected heights or with hazardous machinery." (R. 19). Therefore, any error in failing to find these conditions as severe impairments was harmless.

    B.    <u>Listing 12.04</u>

Morris next contends the ALJ erred in finding his impairments did not meet listing 12.04, which addresses affective disorders that are "[c]haracterized by a disturbance of

7

mood, accompanied by a full or partial manic or depressive syndrome." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (hereinafter "listing 12.04"). Morris bears the burden of showing that his impairments meet or equal a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). The regulations also provide that Morris "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [his] medical impairment(s)." 20 C.F.R. § 404.1512(a). Moreover, Morris's impairments must "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

To determine whether Morris met listing 12.04[2], the ALJ first considered whether Morris satisfied the paragraph B criteria of the listing.[3] The ALJ found Morris had only mild restrictions in activities of daily living, and observed that Morris "noted no problems performing personal care or preparing simple meals, but stated he had to sit when shopping." (R. 14). In the area of social functioning, the ALJ found Morris had

---

[2] Morris can meet listing 12.04 by showing that he satisfies the criteria in paragraphs A and B of that listing. Alternately, Morris may satisfying the criteria of paragraph C. The A criteria of the listings set forth clinical findings that medically substantiate a mental disorder. Listing 12.00A. The criteria in paragraphs B and C describe functional limitations that would prevent any gainful activity. *Id.*

[3] To satisfy the paragraph B criteria of listing 12.04, Morris must establish he has at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* For the purposes of the mental disorder listings, "marked" means "more than moderate but less than extreme." Listing 12.00(C).

moderate difficulties, and noted that Morris's "wife reported that the claimant spoke with family and friends on the telephone 3 or 4 times a week, and denied problems getting along with family, friends, or neighbors," but that his mother "reported that [Morris] isolated himself." *Id.* Regarding concentration, persistence or pace, the ALJ found Morris "has moderate difficulties," and explained that Morris "reported he watched television often and was able to follow instructions well at times," but that "he alleged that he had trouble with his memory at times, did not complete tasks, and that his conditions affected his concentration." As for episodes of decompensation, the ALJ found Morris "has experienced no episodes of decompensation which have been of extended duration," and noted that Morris "has not alleged a history of any episodes of decompensation of extended duration, and the medical evidence of record contains no evidence of any such episodes." *Id.*

Next, the ALJ considered the paragraph C criteria.[4] The ALJ found Morris did not meet the paragraph C criteria of listing 12.04 because of the absence of any evidence showing Morris had repeated episodes of decompensation, a residual disease process that had resulted in such marginal adjustment that even a minimal increase in mental demands

---

[4] To satisfy the paragraph C criteria of listing 12.04, Morris must show that he has one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the him to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

or change in the environment would be predicted to cause him to decompensate, or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of the continued need for such an arrangement. (R. 15).

The court's review of the record reveals that substantial evidence supports the ALJ's findings. For example, as the ALJ observed, treatment records from Morris's psychiatrist

> generally note the claimant to report that he is doing well, sleeping well, and feeling good (Exhibit 15F). Notably, on February 16, 2011, the claimant informed his psychiatrist that he had gone without his Vyvance for a few days, but that his mood and anxiety remained under control. On June 13, 2011, he informed his psychiatrist that his medications were the best they have been in 35 years, that his mood was improving, and that he was better able to handle things. He further reported he was sleeping well and that his energy level was satisfactory.

(R. 20-21). The ALJ added that Morris's "treatment notes reveal a good response to psychotropic medication . . . and support non-disability at this time." (R. 20). Indeed, as Dr. Bentley's noted on December 17, 2010:

> [Morris] reports his mood is good. He feels good overall. This was a miracle medication for me. Sleeping good. Appetite is under control. Everything is like it is supposed to be. [He] states he is doing pretty good. He has felt much better overall. He has been doing fairly well. He is starting to get benefit.

(R. 396). In addition, Dr. Bentley's notes from the December 17, 2010, visit show that his mental status examination found Morris's affect was euthymic, and his mood was good, that Morris's insight and judgment were good, and that he had no memory deficits.

10

*Id.* Moreover, numerous other treatment notes from Dr. Bentley show similar examination findings, which further supports the ALJ's findings. (R. 394-95, 397, 399-402). In fact, even the consultative psychological examiner, Dr. Ruth Lyman, Ph.D., opined that Morris was "moderately impaired by mental conditions," which also supports the ALJ's findings.

Put simply, there is no evidence that Morris has suffered any episodes of decompensation or has otherwise satisfied the paragraph C criteria. Moreover, substantial evidence supports the ALJ's findings that Morris's mental impairments did not cause "marked" limitations in two of the paragraph B criteria of listing 12.04. Accordingly, because this court does not reweigh the evidence, there is no reversible error.

  C. <u>The ALJ's RFC Finding</u>

Morris's final contention of alleged error is related to the ALJ's RFC finding. Doc. 11 at 4-5. Unfortunately, Morris's entire argument on this issue consists of statements that Morris "disagrees with" various aspects of the ALJ's RFC findings. Doc. 4-5. Moreover, Morris provides no citation to specific evidence showing that the ALJ's RFC finding was not supported by substantial evidence. *See Id.* Therefore, Morris has failed to meet his burden of properly presenting this issue for review. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir.2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal."). Alternatively, Morris's contention fails because the ALJ's RFC is supported by substantial evidence. According to the ALJ,

11

"there is no contraindication in the medical evidence of record for the ability to perform at least light, unskilled work with the assigned limitations." (R. 21). In making this finding, the ALJ afforded "greater weight . . . to the clinical, objective, and radiological findings of [Morris's] treating physicians." *Id.* Among other things, the ALJ noted that Morris's "alleged sensory and motor loss, with an inability to pick up anything due to arthritis in both hands . . . is inconsistent with the findings of [his] treating physician, Dr. Thomas Roy Bryant, whose examinations . . . consistently revealed no arthralgias or stiffness," and that Morris's "allegations of right leg swelling with prolonged standing" were not supported by Morris's "treating physicians [who] noted only slight edema, and [that even Morris] determined that his edema was not of such a severity to merit compliance with his physician's instructions to use support stockings." (R. 19). The medical evidence supports the ALJ's findings.

Likewise, the substantial evidence supports the ALJ's RFC findings with respect to Morris's mental limitations. As the ALJ explained, he provided for Morris's moderate mental limitations by restricting him to "simple, routine, repetitive tasks," and a "low stress job defined as occasional changes in the work setting, goal oriented work rather than production rate pace work; dealing with things rather that people; and preferably a well spaced work environment." (R. 15, 20). Likewise, the ALJ accommodated Morris's presyncope and dizziness by prohibiting "work with hazardous machinery or unprotected heights," and "climbing ladders, ropes, and scaffolding," and accommodated Morris's mild degenerative disc disease of the cervical spine, by limiting him to work that allowed

a sit/stand option and only occasional to frequent postural activities. (R. 15, 19). There is nothing in the record to challenge the ALJ's findings or to support Morris's contention of error.

Put simply, the ALJ weighed the evidence and assessed Morris's RFC. Based on its review of the record, the court finds that substantial evidence supports the ALJ's RFC finding. While Morris is free to disagree with that finding, this court does not reweigh the evidence, and accordingly, there is no reversible error.

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Morris is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done this 21st day of July, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE